Good morning, Your Honors. Carl Gunn representing Mr. Smith. I'm going to try to save two minutes of my time for rebuttal and I'll try to keep track of my time. This case, Your Honor, the government talks or the state talks about strategic choice. This is not a case about a strategic choice by the trial attorney. It's about a choice made without the information needed to make a strategic choice. Not without factual information so much because it appears that the trial attorney did interview the witness, Mr. Carl, but without the legal information that she needed to make a strategic choice. First, she ignored fairly basic case law on how and when witnesses can claim the privilege against self-incrimination. She just assumed that if Mr. Carl was going to be called as a witness, he had to testify about everything when in fact it's pretty clear under Fifth Amendment case law that that's not the case. Second, she had a mistaken secondary rationale that has no support in any aiding and abetting case law and is contradicted by aiding and abetting case law, at least from other jurisdictions if not California, that you could somehow be guilty of aiding and abetting if all you told someone is where down the street they could get some cocaine. I'd like to start with what appears to have been her main reason, that calling Mr. Carl the witness, quote, would have put cocaine in Mr. Smith's hands, unquote. That might have been a legitimate concern if that was what calling Mr. Carl would have done, but it wasn't a concern because it wasn't what calling Mr. Carl would have done. There are two basic legal rules that lead to that conclusion. First, witnesses can and in fact have to claim the privilege on a question-by-question basis. Second, the witness can decide when to claim the privilege. The witness can decide when to stop. Well, except, you know, once you start down the line of questioning, if the subject matter is opened up, you can't then claim the privilege, right? Actually, that's not true in the case of a – that's true in the case of a defendant, Your Honor. It's not true in the case of a witness. A witness can stop at any point as long as the answer will provide additional incrimination. Well, well, but subject to this other rule for a witness, then, you know, is – if that prevents, in effect, you know, effective cross-examination, then, I mean – Testimony could be stricken. Testimony goes out, right? That's the issue. But, Your Honor, I would submit that in this case, that would – there's two reasons that didn't justify counsel's decision here. First of all, I don't think it justified her decision because it appears she was completely unaware of the case law that said that's the way the line's drawn. Second of all, that's really not a reason not to give it a shot. The worst that's going to happen is the testimony's going to be stricken and you're back where you start with. Third, Your Honor, I think under the Fifth Amendment case law, it is extremely unlikely that the defendant's right to compulsory process would be sacrificed by striking in that way. The court held in United States v. Lord, which was actually an opinion that Judge Pragerson authored some time back, that striking testimony is, quote, an extreme sanction, unquote. It only gets used as a last resort. And I think, Your Honor, Justice Hema made the point accurately when you said the question is whether it's going to frustrate cross-examination. And here I submit there would have been an extremely strong argument that if all Mr. Carl got up there and did was testify, I went up to Mr. Smith, I asked where I could get drugs, he told me I could get them down the street, that's where I went and got the drugs. They don't need to then ask what he did with the drugs to have effective cross-examination. What really matters is cross-examination about that initial conversation with Mr. Smith, cross-examination about what he did afterwards when he went to get the drugs, and that kind of thing. I think a state court judge, a trial judge, would have been very hard-pressed to say that cross-examination was truly frustrated by not letting them ask those additional questions. I think it's somewhat similar to the Lord case and the Negrete Gonzalez case on their facts. They said it was improper to strike testimony when the witness wouldn't answer questions about where the witness got the drugs. Are those federal cases or state cases? They're Ninth Circuit cases. What's the rule? What would the state court judge be looking at in terms of the state court law? Well, I didn't find any state court cases, Your Honor, actually addressing it. But remember, we're talking about a federal constitutional rule, so federal cases would certainly be persuasive at least if not controlling. When you say federal constitutional rule, you mean the Fifth Amendment? Correct. And compulsory process. It's sort of an interaction of the two. I think the striking issue is really more of a compulsory process issue because you're depriving the defendant of the testimony that's being stricken. But the underlying constitutional right at stake in this proceeding is his right to effective assistance of counsel. Correct. And the assistance was ineffective because she misunderstood the interaction of the Fifth Amendment, a witness's Fifth Amendment privilege and a defendant's right to compulsory process and how that would have affected the witness's testimony here. But both to Greta Gonzalez and Lord, I think here we have the mirror image of that. Here you have a witness who won't testify about what he did with the drugs. And I think there would be a very strong argument, would have been a very strong argument, that the testimony could not have been stricken and it was error if it was. The concern about aiding and abetting liability, Your Honor, I address in my briefs. I mean, it's almost like someone walks up to me and says, where's the soda machine? I said, it's down the hall. They go buy a soda. I'm not aiding and abetting their purchase of a soda. There's cases from other circuits that squarely hold that on these facts. And the general standard for aiding and abetting under California law is the same as under federal law. It requires a strong intent and purpose. A defendant has to, quote, associate himself with a venture. He has to, quote, participate in it as something that he wishes to bring about, unquote. Just telling someone where they can get cocaine or rock cocaine if they want to is not participating in the selling of whoever ends up selling it to them down the street. And think about how likely it was that a prosecutor would have done that in this case. What would the prosecutor have had to do? First, he'd have to admit that his witness and his charge was wrong and the defense witness was telling the truth. Second, he'd have to pray that a trial court wouldn't find the evidence insufficient as a matter of law. And third, he'd have to pray that a jury would buy it if the trial court let it go to the jury. So I would simply submit that that, first of all, wasn't based on a reasonable investigation of aiding and abetting law. And second, I don't think it would have been a defensible decision in any event. Your Honor, what we have here is actually very similar to a district court case that was cited with approval in the Spann case, the Ninth Circuit case, the Martinez-Messias case. There the attorney didn't put in some evidence because he was afraid it would open the door to more damaging evidence. But he never researched carefully whether it would open the door to that evidence the way he thought, and it turned out, in fact, he was probably wrong. Here you have a similar situation. The attorney assumed that if she put Carl Lawn, the witness, to testify about not getting the drugs from Mr. Smith and getting them from somewhere else, that he had to testify about what he did with them, and it appears that that pretty clearly was incorrect. The State does make some procedural arguments, and I can briefly address those. I think it's interesting that they spend probably three-quarters of their brief on those arguments rather than the substance. First of all, they complained that Mr. Smith never asked for an evidentiary hearing. Well, I tried to go through with some care the California habeas corpus procedure. He didn't have an opportunity to request an evidentiary hearing because that doesn't come up unless the State's ordered to file a return and then he gets to file a traverse. I think we had a case on this whole area. I forget the name. Griffin was. Griffey. Griffey, but it was we. Vacated. Vacated. But in there, the panel explained. Right, and I didn't cite it. I think you're right. And if you follow the Romero case, the California case through, it's pretty clear, too, I think. When you look at the petition, you look at the allegations on their face. And the allegations on the face here, one of the allegations is, quote, a lawyer who fails adequately to investigate and to introduce into evidence records that demonstrate his client's factual innocence or that raises sufficient doubt as to that question, unquote. If that's true, you clearly have ineffective persistence. I think I said about six or seven or eight cases from this court. The question here was whether, of course, in fact, that was true. And, in fact, what we end up finding out from the evidence that was developed to the declaration of hearing is there was an inadequate investigation. Granted, it turns out that the inadequate investigation was inadequate investigation of the law as opposed to inadequate investigation of the facts. But it was an adequate investigation. You have an attorney here who made decisions based on an incorrect understanding of the law. And that cannot means her decision cannot be defended as a strategic choice. I'll submit and save the rest of my time for rebuttal unless the Court has questions. Thank you. May it please the Court. What the defense lawyer had in front of her was a defense that she planned on putting on where she was going to challenge the police officer's ability to perceive whether or not this eraser-sized piece of rock really had been exchanged. She had some evidence from the preliminary hearing that arguably could be portrayed as the police officer going sideways on that issue. And she also had a defendant who didn't, by appearances, be somebody who would be likely to be engaged in cocaine transactions. The alternative that's pressed now is that she should have put on evidence from the co-defendant. As the defense attorney explains in her affidavit, that's going to result in at least one or two scenarios. It's going to result either in portraying the defendant not as an innocent person, but as somebody who's engaged at least in conduct that appears to associate himself, if not actual aiding and abetting, a cocaine sale. That puts the defendant in a different light by yoking him to this unsavory character, Curl, and his unsavory conduct. The other alternative is that Curl's going to testify that the cocaine indeed was in the defendant's hand. That's going to undermine the defense that she presented, and it's going to open up Smith to the exact same sentence that he would have gotten under the furnishing charge. The defense that I think has to be acknowledged is plausible and potentially meritorious in exchange for alternatives that have downside risks. Under Jackson v. Calderon, the Ninth Circuit case, when an attorney has that choice in front of her, it's a strategic decision. The downside risk is that regardless of how Curl testifies under either of the scenarios, he's either going to place the cocaine in the defendant's hand, which is a worse case, a worse case than what she had going in, or she's going to associate the defendant either as an aider and abetter, in other words, either subjecting him to aiding and abetting liability, or at least associating him in the eyes of the jury with aiding and abetting conduct. Either way, the defendant is reduced from being an innocent to being a participant. Under Strickland, you can have hindsight second-guessing. And under Jackson, you can second-guess a lawyer when either way there's a risk. In this case, especially when it's coming from state court and has an extra veneer of deference under the ADPA, there really is no room for a conclusion that this conduct was ineffective. This is 20-20 hindsight, if ever there was one. And that's the full extent of this claim. If the lawyer had done what it is now alleged she should have done, and the defendant had gotten convicted, we would be here again today, and the argument would be, why did the lawyer yoke her defendant to this unsavory character? Why did she not simply take the cleaner route, a route that another lawyer, who represented this defendant on state court, said resulted in a state of affairs that required an outright acquittal. The argument that was made on appeal by a different lawyer was that the path that the defense lawyer took resulted in a state of affairs where the evidence was insufficient to support the verdict at all. So it's just hindsight second-guessing that Strickland says you can't have. What's the basis of your procedural default claim? Well, actually, procedural default, I think, comes into it as an alternative argument. But the main argument is simply an exhaustion argument. What happened here was that the Petitioner went into the State Supreme Court and made an allegation that the lawyer the allegation specifically, as far as I understand it is, that the lawyer asked that the defendant asked the lawyer to interview a witness. The allegation was here or before the Supreme Court? The allegation in the California Supreme Court. I think it's kind of hard to figure out exactly what it is, given the pro se nature of the petition. But I think what it literally is, is an allegation that the defendant asked the lawyer to interview Curl. An assertion, which is really more of a legal assertion, that an attorney should interview witnesses. No real specific allegation that the attorney didn't interview the witness. But I think much more specifically and much more importantly, no allegation of what Curl would have said. Well, if he doesn't know, then there's no basis for the claim. I mean, I don't think it's He attached the letter. He attached the letter. And what did the letter say? He attached the letter. Yes. The letter said, I'm Mr. Curl. I have exculpatory information. I mean, that's totally conclusionary. I think even under Federal, under Ninth Circuit standards, that would even fly as an allegation under Federal habeas. Just to make a conclusory allegation that your Sixth Amendment rights are violated. Well, even if pro se, I think you still have to make an allegation, as the California Supreme Court requires reasonably, that the allegation has to set forth with particularity the underlying historical facts that make up the claim. You can't just Your point is, is the factual basis of that claim for the Supreme Court is not the same as what's in the letter. Exactly. Exactly. As a factual matter. As a factual matter. Yes. I think the factual allegations that were before the California Supreme Court were a lot like the allegations that the Ninth Circuit might see in a regular repeal, where you don't have any kind of indication at all about what the lawyer did, why the lawyer did it, and how it might have made a difference. You don't have any information about what the foregone testimony might have been. All you really have is something that can't be distinguished in any principled way from just mere speculation that could arise. What would the allegations be that you would think you would have to make? Well, I think Specifically. Yes. Specific allegations that you think would meet this test you're advocating. Well, I think specifically the first thing would be an allegation about what Curl would have testified to. That Curl would have testified to X. Yes. Yes. Yes. And I think, I think given the circumstances of the case, it probably would be required also, maybe not, to establish that Curl would have testified. I mean, we don't even have that from Curl, even after the case has gone through the Federal District Court. All we have from Curl is a statement, the way I understand it, that he might have testified, he might not have testified, it would have depended on what his lawyer advised him to do. So this is, the idea that we even know what Curl would have testified about even now, I think, is speculative. But certainly, to say that the California Supreme Court was required to grant relief on No, the question is for exhaustion. For us, exhaustion. Yes. Did he fairly present his ineffective assistance claim to the California Supreme Court? Yes. And I think, I think the Ninth Circuit case law is, is pretty clear that you can't present the facts in a much more favorable light in Federal court than you present it in State court. And I think it's implicitly acknowledged throughout the, my opponent's brief, is that this entire case rests on the factual allegations that were alleged for the first time in Federal court. None of this information about the lawyer's thought process, about what the lawyer actually did. When he started off in Federal court, was he represented by counsel? I don't believe he was, Your Honor. No. But there's nothing that would have prevented him from going back and exhausting this claim once these facts became known. Now, the State isn't under any obligation to, you know, to just fund. To find the time of the problem as well. Well, no, because under In re Robbins, I think it's pretty clear that he can make an argument that if he didn't have reasonably the wherewithal to locate the, the, the is an excuse for, for bringing a claim in an untimely way. So there's nothing that would have prevented this defendant, who I think could have presented these allegations probably in the first place, but if he couldn't, there's nothing that prevents him from going back to the State court under In re Robbins and exhausting them. But until it's exhausted, nothing can happen in Federal court unless the claim is simply the bare bones claim he presented in State court. And that bare bones claim wouldn't pass muster on appeal, and it doesn't pass muster just because you, you denominate the case habeas. Thank you. Thank you. A little rebuttal, Your Honor? First of all, to address the last procedural points first, I think Your Honor, Judge Paez has a very good point. How was he supposed to know what this witness was going to say and what the witness would tell the attorney? Certainly the letter is sufficient to, if there was in fact no follow-up investigation and interview or an inadequate investigation, no defense attorney in his right mind would get a letter like that from a potential witness and then not check it out, not investigate both what the witness would say and investigate the legal underpinnings that would affect the admissibility of that and so on. I respectfully disagree that in the circumstances of this case with a pro se petitioner, Mr. Smith was somehow obliged to make some additional factual proffer before he even got to the evidentiary hearing in state court. Mr. Carl, the witness, and this is in the record, was in an absconded probation violation and may have been in state custody in Texas by that time. The trial attorney, A, had left the county public defender's office, and B, would have been extremely unlikely to provide an affidavit to help prove her own ineffective assistance. So I think Mr. Smith basically produced everything he could produce and made the allegations he could make. The allegation is a little broader than just he didn't interview Mr. Carl. The attorney didn't interview Mr. Carl. It said there wasn't an adequate investigation, and I think especially given a pro se plaintiff, that includes both legal and factual investigation. It was an allegation that the witness wasn't called as a witness, and it was an allegation that there wasn't any good strategic reason for not doing so. I think that fairly encompasses the claims that are being made here. The fundamental premise is that there was an exculpatory witness, the trial attorney didn't call the witness, and this was because the trial attorney didn't check into it adequately. Now we find out that the trial attorney did factually interview the witness, but made a mistake about the decision whether or not to call the witness, but I think that's well encompassed within the claims of an initial pro se petition in state court. With respect to some of the substance, I think it was Judge Tsushima you were asking some questions, or at least the attorney was talking about, well, you know, she had this alternative defense, it was going to be reasonable doubt, and if she put this witness on, well, gee, at the very least it would associate the witness with this unsavory character. Well, Corey, how big of a problem that is when they're hanging out on Skid Row anyway, but even if it is, the problem here is not so much, maybe if she had a correct understanding of the law and her true reason was I didn't want to associate with him with another unsavory character on Skid Row, maybe that would have been defensible, but that wasn't her reason. Her reason was that calling this witness would, quote, put cocaine in Mr. Smith's hands, unquote, and that was simply incorrect. It would not have done that because, one, Mr. Carl, as he told me and as was proffered, would not have testified to that. He would claim privilege, and, two, it was extremely likely, if not certain, that that testimony, the testimony he did give, would not then have been stricken, and even if it was, it wouldn't have been any big harm. So the problem here is that she based her decision on incorrect law, not that if she'd really researched the law and had a correct understanding, maybe she would have still decided the same thing. Probably she wouldn't have, but, you know, that doesn't defend it when she based it on an error, and that's our point. I'll submit it, Your Honor. Thank you. Thank you. The matter is submitted, and the next matter is also submitted, and that's Davis v. Taylor, and the Court will recess until 9 a.m. tomorrow morning. The hearing is adjourned. Thank you.
judges: Pregerson, Tashima, Paez